UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ZEAD KHALAF IBRAHIM, also known as ZEAD KHALAF AL-SAMMARRAIE, ZIYAD KHALAF IBRAHIM, IBRAHIM Z. KHALAF, ZEAD KHLAF IBRAHEM, and ZEAD KH. IBRAHEM,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF STATE,

Defendant.

C.A. No. ________________

**COMPLAINT**

Plaintiff Zead Khalaf lbrahim (also known as Zead Khalaf al-Sammarraie, Ziyad Khalaf Ibrahim, Ibrahim z. Khalaf, Zead Khlaf Ibrahem, and Zead Kh. Ibrahem) brings this complaint against Defendant United States Department of State ("State Department") for injunctive and other relief under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

**INTRODUCTION**

Mr. Ibrahim brings this action against the State Department to assert his rights under the Freedom of Information Act. Mr. Ibrahim is an Iraqi citizen and currently lives in Jordan as a political refugee. While living in Iraq, Mr. Ibrahim openly supported the United States and did business with American soldiers. As a result, Mr. Ibrahim was abducted and tortured by conservative militias. Mr. Ibrahim was forced to flee from Iraq after he barely survived an assassination attempt and then received a subsequent death threat.

Thereafter, Mr. Ibrahim filed an I-590 Iraqi Resettlement Application, which was denied, and a request for reconsideration, which was also denied. However, Mr. Ibrahim intends to renew

his request for reconsideration based on certain errors in the determination and substantial and material new evidence. Documents that Mr. Ibrahim requested from the State Department are important for substantiating this renewed request, but Mr. Ibrahim has been waiting for almost four years for responses to his FOIA requests. Over this four-year period, Mr. Ibrahim has made multiple FOIA requests to the State Department and other agencies—and received virtually nothing in response. Mr. Ibrahim's only remaining recourse is through judicial intervention and oversight.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Zead Khalaf lbrahim, also known as Zead Khalaf al-Sammarraie, Ziyad Khalaf Ibrahim, Ibrahim z. Khalaf, Zead Khlaf Ibrahem, and Zead Kh. Ibrahem, is a citizen of the Republic of Iraq. Mr. Ibrahim is a political refugee and currently resides in Amman, Jordan.

2. Defendant United States Department of State ("State Department") is a department of the Executive Branch of the United States government. The State Department is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) and has possession, custody, and control of records, as defined under 5 U.S.C. § 552(f)(2), that Mr. Ibrahim seeks through this Complaint.

3. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

4. This venue is proper under 28 U.S.C. § 1391(b) and 5 U.S.C. § 552(a)(4)(B).

## FACTS

### *Mr. Ibrahim was abducted and attacked on multiple occasions for supporting the United States and his continued dealings with American soldiers*

5. Mr. Ibrahim is a 52-year old Iraqi citizen and Sunni Muslim. He is married and has three sons.

6. Mr. Ibrahim was born and raised in Iraq. He has a post-secondary education in

medical biology and trained as a medic during his compulsory military service.

7. After spending time working in medical laboratories, Mr. Ibrahim opened a grocery and convenience store in the Al-Qadissiya area of Iraq.

8. When the United States invaded Iraq in 2003, American soldiers were stationed near Mr. Ibrahim's store.

9. Mr. Ibrahim openly supported the American presence in Iraq and befriended the American soldiers that frequented his store. This store was well-known in the area. Mr. Ibrahim had a reputation as a fair businessman who was friendly to Americans as well as non-Muslims, including Christians.

10. Mr. Ibrahim opposed the rising sectarian violence and corruption in Iraq. His pro-American viewpoints resulted in severe reprisals and persecution.

11. In 2005, individuals associated with conservative religious militias began visiting Mr. Ibrahim's store and prohibited him from continuing to do business with Christians and American soldiers.

12. Mr. Ibrahim ignored these threats from conservative religious militias and continued doing business with Americans and Christians—at his peril. Mr. Ibrahim was abducted from his shop, blindfolded, and interrogated about his cultural, religious, and political beliefs. The abductors accused Mr. Ibrahim of collaborating with the United States, physically beat him, and threatened future violence if he continued to do business with American soldiers.

13. Approximately three weeks later, Mr. Ibrahim was abducted again by members of a conservative religious militia, interrogated about his support of America, physically beaten, and verbally abused. Mr. Ibrahim was released after receiving a final warning that he should never to do business with or support the Americans again.

14. Mr. Ibrahim did not comply with those warnings. He continued to support the United States openly. He also continued to be friendly with American soldiers and did business with them.

15. On June 21, 2005—only a few weeks after his second abduction— Mr. Ibrahim was shot by an unknown gunman as he was getting into his car to go to work.

16. Family members took Mr. Ibrahim to the hospital, where he underwent surgery to reconstruct his jaw and remove the bullet. However, the bullet could not be removed. It remains lodged in Mr. Ibrahim's neck, near his spine, causing him constant physical problems.

17. Mr. Ibrahim's recovery was slow and incomplete. After returning home from the hospital, he was unable to work. To this day, Mr. Ibrahim still suffers from the psychological and physical effects of his abductions and assassination attempt.

18. Mr. Ibrahim feared for his safety and his family's safety because individuals in the community informed him that he was still considered a target by conservative religious militias.

19. These fears crystallized in early December 2006, when Mr. Ibrahim received a note with explicit death threats against him and his family.

***Mr. Ibrahim and his family flee to Jordan as political refugees and seek resettlement***

20. After receiving these death threats, on or about December 10, 2006, Mr. Ibrahim fled to Jordan with his wife and children, taking only the possessions that fit in his car.

21. Since fleeing Iraq, Mr. Ibrahim and his family have lived in a one-room apartment in Amman, Jordan. Mr. Ibrahim registered with the United Nations High Commissioner for Refugees ("UNHCR") and received refugee certification on September 14, 2011.

22. Because Jordan does not permit refugees to work, Mr. Ibrahim and his family live off of aid from the UNHCR. Mr. Ibrahim has been diagnosed with depression and post-traumatic

stress disorder ("PTSD") as a result of his experiences in Iraq.

23. Mr. Ibrahim continues to receive weekly counseling to help with his PTSD and other psychological effects from his experiences in Iraq. The hospital Mr. Ibrahim visited in Amman informed him that it is not equipped to remove safely the bullet lodged in his neck near his spinal cord.

24. Mr. Ibrahim submitted an I-590 Iraqi Resettlement Application and met with United States officials stationed in Jordan for an interview. He received notification on or about November 1, 2010 that the United States Citizenship and Immigration Service ("USCIS") denied his Resettlement Application. Mr. Ibrahim appealed that denial, which USCIS also denied. Mr. Ibrahim was not represented by counsel with this initial application.

25. It was not until after his Resettlement Application was denied that Mr. Ibrahim was diagnosed with PTSD. This clinical diagnosis explains Mr. Ibrahim's inability to recall particular facts about his abductions and also explains any inconsistencies in his original Resettlement Application.

26. On or about March 11, 2014, Mr. Ibrahim submitted a Request for Reconsideration of his Resettlement Application. This Request for Reconsideration was based on errors with USCIS's determination and substantial and material new evidence.

27. By letter dated April 29, 2014, USCIS denied Mr. Ibrahim's request for reconsideration. In this letter, USCIS stated that it Mr. Ibrahim's request was considered, "as were the entire contents of your case file" (emphasis added). This letter also references "the information that [Mr. Ibrahim] had previously provided" (emphasis added). A true and correct copy of this April 29, 2014 letter is attached as **Exhibit A**.

***Mr. Ibrahim's FOIA requests have been pending for almost four years***

28. Under FOIA and the Privacy Act, Mr. Ibrahim requested the contents of his case file and all other information from USCIS and the State Department in connection with his Resettlement Application and Request for Reconsideration.

29. Specifically, on October 9, 2012, Mr. Ibrahim's counsel submitted a request to USCIS under FOIA and the Privacy Act, and followed up on that request with a verification of Mr. Ibrahim's identity on November 9, 2012. USCIS responded by letter dated November 20, 2012, stating that the FOIA request would be processed.

30. On or about November 9, 2012, Mr. Ibrahim submitted a FOIA and Privacy Act request to the State Department. The State Department responded by letter dated November 19, 2012, stating that it would begin processing Mr. Ibrahim's request and assigning him Case Control Number F-2012-39801.

31. On June 23, 2014, Mr. Ibrahim's counsel finally received a response to his FOIA request to USCIS. This June 23, 2014 letter from USCIS enclosed a letter dated November 23, 2012 from USCIS, explaining that no records had been located. Neither Mr. Ibrahim nor his counsel had received or been aware of the November 23, 2012 letter from USCIS until after it was enclosed with the June 23, 2014 letter.

32. On July 14, 2014, Mr. Ibrahim appealed USCIS's response to his FOIA request. USCIS responded on July 24, 2014 that no records had been located. USCIS did not claim that any responsive documents were exempt from Mr. Ibrahim's FOIA request.

33. On September 9, 2014, Mr. Ibrahim requested under FOIA and the Privacy Act that USCIS conduct a second search for responsive materials. USCIS responded on September 19, 2014 that it was unable to locate any records. USCIS did not claim that any responsive

documents were exempt from this FOIA request.

34. Finally, on or about November 12, 2014, USCIS located a four-page document concerning Mr. Ibrahim. Upon information and belief, that document references information in files and databases available to government agencies, including both USCIS and the State Department. Moreover, upon information and belief, this four-page document was in the USCIS's possession at the times USCIS claimed that it did not have any responsive documents concerning Mr. Ibrahim.

35. Upon information and belief, the four-page document that USCIS produced does not constitute the entire "case file" and all other information considered in connection with Mr. Ibrahim's Resettlement Application and Request for Reconsideration. For example, that document lacks any of the underling applications and requests that Mr. Ibrahim submitted. It also lacks any interview notes, correspondence, or memoranda concerning Mr. Ibrahim.

36. On January 21, 2015, Mr. Ibrahim submitted a second FOIA and Privacy Act request to the State Department, which sought a more expansive scope of documents than his earlier request. A true and correct copy of this request is attached as **Exhibit B**. The State Department also assigned this request with Case Control Number F-2012-39801.

37. After failing to receive any additional correspondence from the State Department, Mr. Ibrahim's counsel inquired about the status of his request on February 12, 2015.

38. The State Department's FOIA Requester Service Center responded on February 13, 2015, stating that a Case Analyst was contacted and an estimated completion date ("ECD") was requested.

39. After failing to receive an ECD, Mr. Ibrahim's counsel contacted the State Department and followed up with an email on April 7, 2015. The State Department's FOIA

Requester Service Center responded on April 16, 2015, stating that the State Department was looking into Mr. Ibrahim's request.

40. On April 22, 2015, the State Department provided an ECD of August 2015, subject to change, and stated that searches were pending for the materials that Mr. Ibrahim requested.

41. After August 2015 passed with no further correspondence from the State Department, Mr. Ibrahim's counsel contacted the State Department on September 8, 2015 and explained Mr. Ibrahim's serious medical condition and why he urgently needed the requested information.

42. On February 18, 2016, Mr. Ibrahim submitted an appeal to the Appeals and Review Panel of the State Department. The State Department replied on February 25, 2016, stating that the matter was not subject to administrative appeal since no specific material was denied in response to Mr. Ibrahim's requests. The State Department also stated that Mr. Ibrahim was not required to appeal administratively before instituting suit in federal court. A true and correct copy of this letter is attached as **Exhibit C**.

43. Thereafter, Mr. Ibrahim's counsel contacted the State Department via telephone. In response, the State Department issued a new ECD of October 31, 2016 concerning Case Control Number F-2012-39801. This ECD is almost four years from the date of Mr. Ibrahim's initial FOIA and Privacy Act request to the State Department.

44. Mr. Ibrahim remains in Jordan as a political refugee. He cannot return to Iraq as a result of the persecution he suffered for supporting the United States and American soldiers.

45. Mr. Ibrahim intends to submit a renewed request for reconsideration of his Resettlement Application, based on certain errors in USCIS's determination and substantial and material new evidence. Mr. Ibrahim is prejudiced, however, by the State Department's failure to

make a determination with respect to his FOIA request within the statutory deadline and the resulting unreasonable and excessive delay in providing the requested documents.

**COUNT I**
**(FOIA Violations)**

46. Mr. Ibrahim restates the foregoing paragraphs as if set forth expressly herein.

47. The State Department has not provided Mr. Ibrahim with a determination whether it will comply with his FOIA request, and the reasons therefor, within the applicable statutory deadline.

48. The State Department has not produced any documents in response to Mr. Ibrahim's FOIA requests.

49. The State Department has not informed Mr. Ibrahim about the scope of the documents it will produce in response to his FOIA requests and the exemptions it will claim with respect to any withheld documents.

50. FOIA's intended purpose is to assure timely public access to governmental information and records. As Congress stated, "'[i]nformation is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial.'" *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1187 (N.D. Cal. 1998) (quoting H. Rep. No. 876, 93d Cong., 2d Sess. (1974) (discussing "the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits")).

51. Mr. Ibrahim has a right of access to the information he requested under 5 U.S.C. § 552(a)(3) and there is no legal basis for the State Department's unreasonable and excessive delay in providing complete responses to his FOIA requests.

52. The State Department's unreasonable and excessive delays in making determinations about Mr. Ibrahim's FOIA requests and disclosing non-exempt documents violates

FOIA and is tantamount to a denial.

53. Upon information and belief, the State Department has improperly withheld non-exempt documents in response to Mr. Ibrahim's FOIA requests. For example, the State Department has possession, custody, and/or control of the case file, interview notes, correspondence, and memoranda concerning Mr. Ibrahim's Resettlement Application.

54. Accordingly, for the reasons described above, the State Department has violated FOIA. Mr. Ibrahim is entitled to injunctive and other relief.

**REQUEST FOR RELIEF**

WHEREFORE, Mr. Ibrahim respectfully requests an order from this Court granting the following relief:

A. Order the State Department to provide access to the requested documents;

B. Expedite this proceeding as provided for in 28 U.S.C. § 1657;

C. Supervise the State Department's ongoing progress to ensure that it exercises due diligence in processing Mr. Ibrahim's FOIA request;

D. Award Mr. Ibrahim his costs and reasonable attorneys' fees incurred this action, as provided in 5 U.S.C. § 552(a)(4)(E); and

E. Grant such other and further relief as may deem just and proper.

ZEAD KHALAF IBRAHIM, also known as
ZEAD KHALAF AL-SAMMARRAIE,
ZIYAD KHALAF IBRAHIM, IBRAHIM Z. KHALAF,
ZEAD KHLAF IBRAHEM, and ZEAD KH. IBRAHEM

By his attorneys,

/s/ Leonard H. Freiman

Leonard H. Freiman
DC Bar No. 366744
GOULSTON & STORRS PC
1999 K Street, NW, Suite 500
Washington, DC 20006
tel. (202) 721-0011 | (617) 574-4188
fax (202) 721-1111 | (617 574-7579
lfreiman@goulstonstorrs.com

Dated: June 27, 2016

Of counsel:

Matthew P. Horvitz
GOULSTON & STORRS PC
400 Atlantic Ave.
Boston, MA 02110
tel. (617) 482-1776
fax (617) 574-4112
mhorvitz@goulstonstorrs.com