**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ZEAD KHALAF IBRAHIM**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF STATE**, <br><br><br> Defendant. | Case No. 1:16-cv-01330 (TNM) |

## MEMORANDUM OPINION

Plaintiff Zead Khalaf Ibrahim lives in Jordan as an Iraqi political refugee. He tried to

come to the United States, but the United States Citizenship and Immigration Service denied his

I-590 Iraqi Resettlement Application and, subsequently, denied his Request for Reconsideration

of that denial. At issue in this case is the Department of State's response to Mr. Ibrahim's

Freedom of Information Act requests for all records in the Department's possession related to the

denial of his application and the denial of his Request for Reconsideration. The Department of

State has produced some responsive records and has redacted or withheld other records. Before

this Court are the Department of State's motion for summary judgment and Mr. Ibrahim's cross-

motion for partial summary judgment. Because some exemptions that the Department of State

invokes properly apply but others do not, the Defendant's Motion for Summary Judgment will be

granted in part and denied in part, as will the Plaintiff's Cross-Motion for Partial Summary

Judgment.

# I.  BACKGROUND

Mr. Ibrahim alleges that he is a Sunni Muslim who openly supported the American presence in Iraq in the early 2000s and who did business with Americans and non-Muslims at his grocery and convenience store.  Compl. ¶¶ 5, 9.  Mr. Ibrahim alleges that religious militias in Iraq warned him to stop doing business with Christians and with American soldiers and that they kidnapped and beat him twice.  *Id.* ¶¶ 11-13.  He also alleges that he fled from Iraq to Jordan with his family after receiving death threats and being shot by an unknown man.  *Id.* ¶¶ 15-20.

Mr. Ibrahim submitted an I-590 Iraqi Resettlement Application to the United States Citizenship and Immigration Service (USCIS) and registered with the United Nations High Commissioner for Refugees (UNHCR).  *Id.* ¶¶ 21, 24.  The USCIS denied Mr. Ibrahim's resettlement application in November, 2010.  *Id.* ¶ 24.  Almost a year later, in September 2011, the UNHCR certified Mr. Ibrahim as a refugee.  *Id.* ¶ 21.  In October 2011, Mr. Ibrahim submitted his first Freedom of Information Act (FOIA) request to the Department of State, requesting all records in its possession related to the USCIS's denial of his Resettlement Application.  *Id.* ¶ 30; *id.* Ex. B 2.

In 2014, Mr. Ibrahim submitted a Request for Reconsideration to the USCIS, arguing that it erroneously denied his Resettlement Application and that it should consider new evidence.  *Id.* ¶ 26.  At least part of the new evidence in question appears to be Mr. Ibrahim's diagnosis of Post-Traumatic Stress Disorder (PTSD), which he says "explains Mr. Ibrahim's inability to recall particular facts about his abductions and also explains any inconsistencies in his original Resettlement Application."  *Id.* ¶ 25.  The USCIS denied Mr. Ibrahim's Request for Reconsideration in April 2014.  *Id.* ¶ 27.  In January, 2015, Mr. Ibrahim made a second FOIA

request, asking for all records related to the denial of reconsideration as well as all records related to the initial denial of his Resettlement Application. *Id.* Ex. B 1.

Unsatisfied with the Department of State's response to his FOIA requests, Mr. Ibrahim filed this lawsuit. After discussing the case with Mr. Ibrahim, the Department of State performed a supplemental search, produced additional records, and informed Mr. Ibrahim that it had withheld other records under FOIA's exemptions. Def.'s Memo. ISO Mot. Summary J. 2-3; Pl.'s Memo. ISO Cross-Mot. Summary J. 6-7. The parties have agreed that certain redactions are appropriate under FOIA Exemptions 6 and 7(C) and have narrowed the issues in dispute so that the only question now before me is whether FOIA Exemptions 3, 5, and 7(E) properly apply to four documents that the Department of State withheld or redacted: (1) Document C06268823, which is the UNHCR's Resettlement Registration Form for Mr. Ibrahim; (2) Document C06268856, which is the USCIS's Refugee Application Assessment for Mr. Ibrahim; (3) Document C062658852, which is the USCIS's official assessment of Mr. Ibrahim's Request for Reconsideration; and (4) Document C06268858, which is a chronology of the USCIS's processing of Mr. Ibrahim's case. *See* Pl.'s Memo. ISO Cross-Mot. Summary J. 15.[1] The Department of State produced these documents to the Court for *in camera* review and indicated on the face of the redacted documents which exemptions formed the basis for which redactions. I have reviewed the *in camera* filing as well as the parties' briefing and relevant law.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] The parties also disagree about the applicability of FOIA Exemption 5 to Document C06258816, but Mr. Ibrahim has chosen not to argue the point since the Department of State's representations about the document show it would not matter to him. *Id.* at 15 n.11.

law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365-66 (D.C. Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (records sought must be "reasonably describe[d]"). Thus, a FOIA defendant is entitled to summary judgment if it demonstrates that there is no genuine dispute about whether "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Office of United States Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). To show that unproduced documents are exempt from FOIA, an agency may file "affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). Courts review the applicability of FOIA exemptions *de novo* but give "substantial weight to detailed agency explanations" of national security concerns related to FOIA disclosures. *Id.*

## III.  ANALYSIS

### A.  FOIA Exemption 3 Does Not Apply to Any of the Withholdings or Redactions

Under FOIA Exemption 3, information that must be withheld from the public under another statute is not subject to FOIA and thus may be completely withheld. 5 U.S.C. § 552(b)(3)(A)(i). Section 222(f) of the Immigration and Naturalization Act (INA) requires the withholding of Department of State records "pertaining to the issuance or refusal of visas or permits to enter the United States." 8 U.S.C. § 1202(f). FOIA Exemption 3 applies to records

subject to Section 222(f) of the INA. *See, e.g.*, *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741-42 (D.C. Cir. 1983). In addition to protecting information supplied by the individual seeking to enter the United States, Section 222(f) protects "information revealing the thought-processes of those who rule on the application." *Id.* at 744.

The Department of State argues that all of its withholdings and redactions fall within the scope of Exemption 3 because they all involve information "pertaining to the issuance or refusal of visas or permits to enter the United States." Def.'s Memo. ISO Mot. Summary J. 6-9. The Department originally took the view that information related to the denial of Mr. Ibrahim's Resettlement Application "pertains directly to the issuance or refusal of a visa to enter the United States." Notice of Filing Vaughn Declaration Ex. 1 ¶¶ 7-8; *id.* Ex. 2 ¶¶ 10-11. But the Department has since abandoned the notion that Resettlement Applications request visas. *See* Def.'s Reply ISO Mot. Summary J. 6 (stating "refugees entering the United States do not receive visas"). The Department's new position is that Mr. Ibrahim's Resettlement Application sought "permission to travel to the United States through a letter issued by the Department of State, i.e. a permit." *Id.* Thus, the Department concludes that information related to the denial of his Resettlement Application falls within the scope of Section 222(f) and Exemption 3 because it pertains to the denial of a permit. *Id.*

But the Department has cited no authority in direct support of this position. Instead, the Department asks me to rely on a declaration from its Director of the Office of Admissions asserting that the documents at issue here "pertain to the issuance or refusal of a permit to enter the United States." *Id.* at 8 (quoting *id.* Ex. 2 Declaration of Lawrence E. Bartlett (Bartlett Decl.) ¶ 14). A declaration by an interested party cannot establish legal conclusions and does not adequately prove that Exemption 3 applies to records related to Resettlement Applications. *See*

*Stolt-Nielsen Transp. Grp., Ltd. v. United States*, 534 F.3d 728, 735 (D.C. Cir. 2008) (holding

that agency's declaration could not decide a question of law in a FOIA case). Ultimately, legal

conclusions about the scope of a statute are the province of the courts, not of bureaucrats. The

Department also urges me to interpret Section 222(f) broadly, citing opinions that note the

confidentiality of "*all* matters covered by the statute" and the broad nature of the statute's phrase

"pertaining to." Def.'s Reply ISO Mot. Summary J. 9-10 (quoting *Medina-Hincapie*, 700 F.2d at

741; *Soto v. Dep't of State*, 2016 WL 3390667 at *4 (D.D.C. June 17, 2016)). But these cases do

not establish a preference for broad interpretations of the statute's coverage or of the term

"permit."

On the other hand, the traditional canons of construction counsel against the

Department's implicit position that, for purposes of Section 222(f), the term "permit" includes

any document conveying permission to enter the United States. First, the canon against

surplusage counsels courts "to give effect, if possible, to every clause and word of a statute," so

that, "if it can be prevented, no clause, sentence, or word shall be superfluous, void, or

insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). This principle sheds light on

Section 222(f)'s protection of records "pertaining to the issuance or refusal of visas or permits to

enter the United States." 8 U.S.C. § 1202(f). To interpret the word "permits" as expansively as

the Department suggests would render the word "visas" superfluous: Since a visa conveys

permission to enter the United States, the Department's reading would make a visa a type of

permit. The statute's reference to visas would therefore add nothing to its protection of records

pertaining to the issuance or refusal of permits.[2]

---

[2] Moreover, the statute's use of the disjunctive "visas or permits" would arguably be illogical if
visas were a type of permit.

Second, the *noscitur a sociis* canon counsels that "a word is known by the company it keeps." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995). This canon helps courts "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Id.* Congress has created specific types of visas and authorized the executive to issue these visas. *See, e.g.*, 8 U.S.C. § 1101(a)(11), (16), (26) (defining diplomatic visa, immigrant visa, and nonimmigrant visa). The word "visas" is a legal term of art that refers to the documents that Congress has identified as visas. Similarly, Congress has created specific types of permits authorizing access to the United States, and the word "permits," at least when used together with the word "visas," is best understood as a reference to these documents. *See, e.g.*, 8 U.S.C. § 1203(a)(1) (authorizing applications for re-entry permits).

These canons of interpretation make clear that a document is not necessarily a permit for purposes of Section 222(f) simply because it conveys permission to enter the United States.[3] So the simple fact that a Resettlement Application seeks "permission to travel to the United States through a letter issued by the Department of State" is not enough to establish that it is a permit.

---

[3] Both parties attempt to analogize the denial of a Resettlement Application to the revocation of a visa, citing competing authorities on whether documents related to a visa revocation pertain to the issuance or refusal of a visa. *Compare Immigration Justice Clinic v. Dep't of State*, 2012 WL 5177410 at *2 (S.D.N.Y. October 18, 2012) (holding that Section 222(f) does not apply to visa revocations or other adjustments or changes to a person's immigration status, which other sections of the United States Code address); *Mantilla v. Dep't of State*, 2012 WL 4372239 at *3 (S.D. Fla. Sept. 24, 2012) (holding that Section 222(f) does not apply to visa revocations based on the plain language of the statute and clear legislative intent); *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 311-12 (D. Conn. 2008) (holding that Section 222(f) does not apply to visa revocations); *with Soto*, 2016 WL 3390667 at *4 (holding that a visa revocation pertains to the issuance of a visa by nullifying it). But regardless of whether a visa revocation pertains to the issuance or refusal of a visa, the connection between a Resettlement Application and a permit is even more attenuated. The Department simply has not shown that any type of permit has a connection to Resettlement Applications.

*See* Def.'s Reply ISO Mot. Summary J. 6. And the Department has not identified any specific type of permit created by statute or regulation that issues upon approval of a Resettlement Application or that is denied upon rejection of a Resettlement Application. Thus, the Department has not adequately shown that Exemption 3 applies to any of its withholdings or redactions.

**B. FOIA Exemption 5 Applies Only to the USCIS's Refugee Application Assessment**

FOIA Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). The Department argues that Exemption 5 applies to three documents that enjoy the deliberative process privilege: (1) the USCIS's Refugee Application Assessment; (2) the USCIS's official assessment of Mr. Ibrahim's Request for Reconsideration; and (3) the USCIS's chronology of events in the processing of Mr. Ibrahim's case. Def.'s Memo. ISO Mot. Summary J. 9-12.

To fall within the scope of the deliberative process privilege, a document must be "both predecisional and deliberative." *Judicial Watch v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). A court considers a document "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Id.* But "agencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations." *Public Citizen, Inc. v. Office of Management & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010). And "an agency may forfeit Exemption 5's protection if it chooses *expressly* to adopt or incorporate by

reference" in a final opinion material that would have otherwise enjoyed the deliberative process privilege. *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015).

All but one page of the USCIS's Refugee Application Assessment enjoys the protection of the deliberative process privilege and Exemption 5. My *in camera* review of the document confirms the Department's representation that it is a predecisional and deliberative document containing a USCIS official's notes and credibility assessments, explaining why the official believed Mr. Ibrahim was not eligible for refugee resettlement. *See* Def.'s Reply ISO Mot. Summary J. 13. Mr. Ibrahim suggests that the interview notes should be disclosed to the extent they are objective and factual rather than deliberative and that the official's analysis should be disclosed to the extent it was incorporated by reference or adopted in the agency's final decision. Pl.'s Memo. ISO Cross-Mot. Summary J. 17-19; Pl.'s Reply ISO Cross-Mot. Summary J. 8-10. Mr. Ibrahim also argues, and the Department does not dispute, that any portion of the document containing the agency's final decision should be disclosed. Pl.'s Memo. ISO Cross-Mot. Summary J. 19; Pl.'s Reply ISO Cross-Mot. Summary J. 10.

As for Mr. Ibrahim's first argument, the factual contents of the interview notes are intertwined with the official's credibility determination so that their disclosure would "inevitably reveal the government's deliberations." *Public Citizen, Inc.*, 598 F.3d at 876. As for his second, none of the official's analysis should be disclosed because, although the agency's final decision concurs with the official about the ultimate disposition of Mr. Ibrahim's Request for Resettlement, it does not "*expressly* . . . adopt or incorporate by reference" any part of the official's analysis. *See Abtew v. Dep't of Homeland Sec.*, 808 F.3d at 899 (distinguishing "approval of [a] memo's bottom-line recommendation" from "adoption or approval of all of the memo's reasoning"). But Mr. Ibrahim's third argument provides persuasive grounds for

ordering release of one page of the document containing the final decision. Thus, Exemption 5

applies to all but one page of the Refugee Application Assessment.[4]

But the deliberative process privilege does not apply to the USCIS's official assessment

of Mr. Ibrahim's Request for Reconsideration or to its chronology. As Mr. Ibrahim argues, the

assessment of Mr. Ibrahim's Request for Reconsideration is a final agency decision, not a

predecisional document. *See* Pl.'s Reply ISO Cross-Mot. Summary J. 6-8 (citing *Judicial Watch*,

449 F.3d at 151). The document states that it does not need supervisory review and purports to

affirm—not to recommend affirmation of—the decision that Mr. Ibrahim challenged. As for the

chronology, my *in camera* review shows that it does not fall within the scope of Exemption 5

because it is factual rather than deliberative. *See Public Citizen, Inc.*, 598 F.3d at 876. Thus, the

Department may not withhold either of these documents under FOIA Exemption 5.

### C. FOIA Exemption 7(E) Applies Only to the Refugee Application Assessment and Limited Redactions of the Chronology

FOIA Exemption 7(E) protects "records or information compiled for law enforcement

purposes" if release of this information "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The Department invokes Exemption 7(E)

in support of all its withholdings and redactions, although it originally did not invoke the

Exemption as a basis for withholding the UNHCR Resettlement Registration Form.

Exemption 7(E) does not justify withholding the UNHCR document. The Department

argues that disclosure of the document would risk circumvention of the law but ignores

---

[4] Exemption 6, the applicability of which Mr. Ibrahim does not contest, justifies redaction of some information on this page.

Mr. Ibrahim's observation that a document prepared by a non-governmental, non-law-enforcement organization to analyze whether a person meets that organization's definition of a refugee is not a document prepared "for law enforcement purposes." *See* Pl.'s Memo. ISO Cross-Mot. Summary J. 25; Def.'s Reply ISO Mot. Summary J. 11; Pl.'s Reply ISO Cross-Mot. Summary J. 13. Exemption 7(E) applies only to records or information compiled for law enforcement purposes and thus does not apply to the UNHCR document.

That said, Exemption 7(E) does apply to the USCIS's Refugee Application Assessment. Unlike the UNHCR, the USCIS is a law enforcement agency. The lines of questioning recorded in the Assessment highlight circumstances that would have raised national security and public safety concerns, reflect why doubts arose over Mr. Ibrahim's credibility, and illustrate lines of questioning that law enforcement officials use to probe possible concerns for credibility, national security, and public safety. *See* Def.'s Reply ISO Mot. Summary J. Ex. 1 ¶ 12. Disclosure of these techniques could reasonably be expected to risk circumvention of the law by enabling applicants for refugee status to plan strategic but inaccurate answers to questions that are material to the USCIS's decisions. *See id.* Ex. 1 ¶ 13. Based on my *in camera* review of this document, I conclude that this information is interwoven throughout the document, except for the one page in the document that provides the final decision without analysis. Thus, Exemption 7(E) applies to all but one page of the Assessment.[5]

Exemption 7(E) also applies to limited redaction of the USCIS's chronology. My *in camera* review of this document shows that most of the entries in the timeline are administrative, and disclosure of this information would not provide insight into law enforcement techniques or create an unacceptable risk of circumvention of the law. But some information relates to steps

---

[5]  As explained above, Exemption 6 justifies redacting some information on this page.

that USCIS took or considered taking to evaluate Mr. Ibrahim's application.  Release of this

material would reveal law enforcement techniques in a way that could risk circumvention of the

law.  *See id.* at 14.  In its *in camera* filing of the chronology, the Department has indicated

specific redactions that it believes Exemption 7(E) would support, and I conclude that these

limited redactions are appropriate.

Finally, Exemption 7(E) does not apply to the USCIS's assessment of Mr. Ibrahim's

Request for Reconsideration.  The Department argues that the document contains information

about the analysis and reasoning that led the reviewing officer to affirm the denial of

Mr. Ibrahim's Resettlement Application and that disclosure of this information would reveal

sensitive law enforcement techniques in a way that could reasonably be expected to risk

circumvention of the law.  *Id.* at 12; *see also id.* Ex. 1 ¶ 26.  But the limited detail in the

assessment does not satisfy the requirements of Exemption 7(E).  Rather than disclosing

sensitive law enforcement techniques, the assessment provides a high-level overview of the case,

stating that Mr. Ibrahim had not adequately explained the inconsistencies in his testimony, even

considering his alleged PTSD, and had not adequately proved any error made by USCIS at the

time of the original determination.  Disclosure of this information would not risk circumvention

of the law, and Exemption 7(E) therefore does not apply.

## IV.  CONCLUSION

For the reasons explained above, I conclude that Resettlement Applications do not pertain

to the issuance or refusal of visas or permits to enter the United States, meaning that the

Department of State may not withhold related documents based on FOIA Exemption 3.  The

Department may withhold the USCIS's Refugee Application Assessment under Exemptions 5

and 7(E), except for the page containing the final decision, which may be redacted under

Exemptions 6 and 7(C). The Department may also redact portions of the USCIS's chronology under Exemptions 7(C) and 7(E), though not under Exemption 5. The Department of State must release the UNHCR document and the USCIS's official assessment of Mr. Ibrahim's Request for Reconsideration, subject to redactions under Exemptions 6 and 7(C). Accordingly, both the Department of State's Motion for Summary Judgment and Mr. Ibrahim's Cross-Motion for Summary Judgment will be denied in part and granted in part. A separate order will issue.

Dated: May 7, 2018

TREVOR N. MCFADDEN
United States District Judge